Good morning, Your Honors. My name is Katherine Bulger and I'm here this morning on behalf of Defendant Appellant Associated Newspapers. I'd like to preserve five minutes of rebuttal time and I'll do my best to follow the clock. Before you this morning is a decision denying a special motion to strike under the California Anti-SLAPP statute in a lawsuit for deaf discrimination and false light brought by Danny Ash, a pioneering internet pornographer and performer against the Mail Online, a website that has news and entertainment. Both parties and the trial court agree that this action falls within the protection of the Anti-SLAPP statute. The lower court denied the motion to strike because it concluded that the plaintiff had satisfied her burden under the second prong of the Anti-SLAPP statute by demonstrating a likelihood of success on the merits. That conclusion was incorrect for two reasons. First, the lower court erred in concluding that the alleged defamatory meaning, and here that's that the plaintiff was the performer who tested positive for HIV, was of and concerning the plaintiff. In fact – You know, when I look at that picture, though, you know, and they have a picture of her on the bed, and then underneath it says, the porn industry was shocked on Wednesday by the announcement that a performer had testified HIV positive, it's pretty hard not to see the caption as captioning the photo. Your Honor – Why is that – why was it wrong for the district court to say that the – there was a defamatory implication that – or an implication that she was that actress? Your Honor, the article is in the appendix from pages 67 to 72. Counsel, the article doesn't say she isn't the person in the picture. The article, if – I don't know who reads these things. I imagine we all see the headlines and pictures at the grocery store. I suppose somebody reads them. But even if you do read it, it doesn't say the woman in the picture is not the one with HIV. All it says is the performer was not immediately identified. And, gee, she is. It says Dani in the picture. And maybe this reporter, James Nye, can't identify her. But that doesn't mean she's not identified. Everybody who has watched her particular pornography knows it's Dani, even if James Nye, the reporter, doesn't. So they think that Dani has HIV. Well, Your Honor, the – my argument to that would be that the law is very clear that in assessing defamatory meaning and whether a statement is of and concerning, you need to look at the article as a whole. Well, I'm looking at the article as a whole, and it never says that Dani doesn't have HIV. It just says, you want me to infer that it means that, and this reporter just isn't very good at writing clearly, because when the reporter says the performer is not identified, I should infer it must not be this woman. Your Honor, I think the inference would be the other way. You would have to infer that it is. The article and the – The headline says, Female Performer Tests Positive for HIV, and it's got a picture of a female performer. Well, the article doesn't connect the headline and the photo. You'd have to scroll down through four paragraphs of text before you got to the photo. But you have – you know, what we're talking about here is some minimal level of sufficiency and triability. That's a pretty low threshold. You might be right in the end, but in terms of whether it should go forward, would you agree that there is a pretty low threshold? I don't agree with that. On the anti-SLAPP statute, Your Honor, I believe the plaintiff – Likelihood? I'm sorry. Likelihood of success. Likelihood. But the law is fairly clear that the plaintiff has to come forward with admissible evidence to demonstrate her claim here. And the oven concerning requirement is a constitutional requirement that was articulated in New York Times v. Sullivan. It was meant very specifically to say that speakers shouldn't be held liable for defaming people they didn't mean to defame. So it's not an obligation that you can slide past. It would be that – The traditional test for malice in the public figure cases has always been knew that the statement was false or falsely disregarded whether it was false rather than specifically intended harm to a particular individual. Is that test no longer applicable at all? The traditional standard would be that the defendants had subjective knowledge of falsity, Your Honor. I think I agree with you. But in this circuit, there's a groundbreaking case, actually, the Newton case, which was followed by Eastwood and Dodds. Did they – are you saying they had no subjective knowledge of whether Danny had HIV? Sorry, Your Honor. What I'm saying is that they never intended to imply Danny had knowledge. So the way that this Court in particular has interpreted the malice standard in libel by implication cases is before you even get to the question of subjective knowledge of falsity, you first get to the question of whether they subjectively intended to convey the defamatory implication. But where did this test come from? Did Newton just make it up out of whole cloth or is it from some Supreme Court case? Newton actually based it on some earlier cases out of the Fourth Circuit and the D.C. Circuit and developed it as part of the actual malice test. So does this add a prong so that if there's a defamatory by implication statement, which is what we have here, then you – we – the court would first or the jury would first have to find that the employees intended to convey this defamatory impression, that there was actual subjective intent? I don't think it adds a prong, Your Honor, but it's a refinement of the actual malice test. The actual malice test is designed to protect speakers who don't mean to intentionally hurt someone by making a false or defamatory statement. And that's a very hard test to apply here where the reporters really didn't mean to imply that she was HIV positive. So why did they use – there's a million things they could have used, and we're not here to make a journalistic judgment, but they used a picture of someone who could be identified. They didn't use – except in the one case where there's another picture – they didn't use some obscure background of a partially nude person or whatever. They used a person that can be identified. And don't we look at the context in which it's presented? Or doesn't a jury ultimately? Well, yes, Your Honor, but the – your reaction to it is, gee, they could have done this better, or anybody looking at this would think it implied X, Y, and Z. That's your reaction. And both of those, Your Honor, are objective. That's some sense that they departed from some standard of prudence. And the Newton test is very clearly a subjective standard. In fact, the Dodds case actually says, even if they should have understood the defamatory implication, we're not going to impose liability here unless there's actual evidence that they did intend the defamatory implication. So all – So absent Newton, if I look at this picture, I say there's a clear defamatory implication that the woman in the picture, Danny, whose name is up there, is the HIV-positive actress. And then the question about whether the reporters had a reckless disregard for the truth is clearly the case that they did, since they knew that she – that they had just pulled a picture at random and that she was not the person who was HIV-positive. So that would seem to – to meet the New York Times standard. But that would – that would undercut the New York Times standard. And the reason for that, Your Honor, is as this Court held, it would make the defendants liable for statements they did not intend to make. The intention of – I'm not sure I get that out of Newton. That was the Wayne Newton case. It was the Newton case, Your Honor. That was a direct quote, actually. And what it says, where it says that actual malice is subjective in nature, it doesn't say that the newspaper has to intend to imply that this person that it's describing is guilty of the act it attributes to him. It just says realize – it means realizes that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement. And that's enough for malice. But then it goes on, Your Honor. And I can get that out of – if somebody does read the text and not just look at the headline and the picture, I can get that out of the text itself. But then – then Newton goes on, Your Honor, and it says where a libel by implication is alleged, the plaintiff must show with convincing clarity that the defendant intended to convey the alleged implication. And then it says anything else would, quote, not only for what was not said, but also for what was not intended to be said. Because intent in the actual malice contents is subjective, the Court has been unequivocally clear that even if Your Honor is right and they could have done a better job, that's  Now, with that – Kennedy, I agree with that. That's objective. But the question of what does it imply, what about the Dodd's case where we're going on to say in that case he has to show a jury could reasonably find by clear and convincing evidence that ABC intended, okay. Right. The question is whether they intended it. That's subjective. To convey the defamatory impression. So that raises the question in – that is the Dodd's case is precisely what we have here, where you have an implication, not a direct statement. Correct? I agree with you, Your Honor. And so they're saying the question is could they find that they intended to convey that, but the answer is not decided solely on somebody putting in an affidavit and saying I didn't intend that. I mean, that would mean you would never have one of these cases. But the answer is, Your Honor, that there can be evidence that contradicts those sworn affidavits. Of course. And there isn't here. Why isn't the evidence the article itself? I can look at that article and I can see a reasonable juror thinking, boy, they wouldn't have had that headline and that picture of Danny if they didn't intend for the reader to think that this famous porn star has AIDS. Because, Your Honor, that is exactly what Newton and Dodd's and East would say you cannot do. Exactly what they say is the words of the article itself, which would go to the reader, cannot imply the element of intent. But there's other evidence here, right? That they state they chose the photos at random and they didn't put in any disclaimer and they stripped out the information in the database that identified her. They didn't actually have the information. There's two competing stories. Mr. Nye and Mr. Forbes swore out affidavits that they got this image from the Corbis  But the question is what the jury could find, right? So if there's two competing statements, they could believe one as opposed to the other. But the evidence submitted by the plaintiff is totally inadmissible and has no relevance here. It's actually an image that the Plaintiff's counsel downloaded after the article was published. We have no idea whether it was the image before the article was published. We have no idea if Mr. Nye or Mr. Forbes seen it. Mr. Weinberg could have had a deposition of Mr. Nye and Mr. Forbes and asked them these questions and chose not to do so. So there is no admissible evidence that contradicts the sworn testimony of the two reporters. What do you do in that online context? Because it does change things up a little. If you look at these, how the headlines are juxtaposed with the photo and knowing that that's how publications are done these days, how the republication of articles, does that matter here? Your Honor, first of all, actually, this headline wasn't juxtaposed with this photo. There were four paragraphs of text between them. You'd actually have to scroll to get to the photo. So in some senses, it actually helps me. But the other thing is, Your Honor, the idea that your actual malice standard or your constitutional rights are based on the publication or the way a publication is distributed has actually been rejected by this Court. And Newton, actually, that was the argument, the way Newton made, was this is a tabloid. That this is – I'm sorry, that wasn't Newton. That was Eastwood. I apologize. That Eastwood argued this is a tabloid, Your Honor. Nobody really reads tabloids. And Judge Kaczynski, in a kind of marvelous turn of face, said the size of the paper shouldn't generate – shouldn't garner the level of your First Amendment protections. There's just no authority that looking at something on your iPhone is different than on the web. But we do have things that say that you'd have to look at it in context. Sure, Your Honor, but – And the context here is big headline, identified performer in the photograph, and nothing saying that it's – that's not her that it's about. Well, Your Honor, the context here is big headline, several paragraphs of text, photo, several paragraphs of text, photo, several paragraphs of text, photo. And in fact, Your Honor, the – I'm sorry. The paragraphs of text are like a sentence. But the captions – the captions, Your Honor, actually – I wouldn't call them paragraphs. They're like a sentence. Paragraph, white space, sentence, paragraph. That, Your Honor, is an argument that tabloids are somehow different, and that's the reason. But there is a specific caption on this photo. But, Your Honor, if you look at the captions on this photo, each of the captions of the stock photos begins, in this case, moratorium, colon. The next one starts out ban, colon. The third one starts out multibillion-dollar industry, colon. And the fourth caption, which actually names the person, doesn't have that caption on that device. It just names the person. Yes, Your Honor. Let's try your exercise. Take it out of the tabloid context. Pretend that we don't know that people are going to see it in the grocery store and think that Danny, whose identity they know, even if this reporter pretends he never looks at porn and doesn't have any idea who this is. Let's take it all out. Let me give you a hypothetical case. Headline on the front page of the New York Times, Politician Takes Money for Vote. And it has a picture of a senator, U.S. senator, taking money. And it has in the text, the politician's identity is not known to the New York Times. Well, he's a U.S. senator from one of the flyover or not even flown over states, so the New York Times never heard of him. They don't know who he is. But everybody in that state knows who he is just from looking at him. And the thing is emailed all over that state. Everybody thinks the New York Times has said that the politician takes money for votes. Why is that hypothetical different from this case? It's not, Your Honor, but in that case, I would believe that the New York Times would be able to win a motion for a summary judgment. Oh, you think the New York Times would win that case? Here in California, on the grounds that they never intended to convey that implication. Counsel, I don't really get to get answers to my questions from you because you don't let me ask them. Sorry, Your Honor. Are you saying the New York Times would win that case? I'm saying that under the anti-SLAPP statute and Newton here in California, New York Times would win that case because if New York Times could come forward with affidavits that those reporters didn't intend to convey the inflammatory implication and the plaintiff couldn't come forward with evidence. Now I have my hypothetical to test your theory against. New York Times has a headline saying politicians takes money and a U.S. Senator from a flyover state that the New York Times doesn't cover and knows little about. Okay, now I've got my hypothetical. That would be the intent, Your Honor. I'm not arguing with you on the oven concerning aspect, Your Honor, but I would suggest the intent would make the New York Times prevail in that case. It would be a senator from a political party that the New York Times generally doesn't like. Actually, Your Honor, common law malice doesn't have much to do with actual malice. Justice Brennan said that was his biggest regret. That's what I suggested to you in an earlier question, but you said no, no, that's not true. Under Newton, it does. I'm sorry, Your Honor. If I said that, I apologize. The Newton analysis would look at the subjective intent of the defendant to convey the defamatory message. In your hypothetical, Your Honor, it would look to the subjective intent of the reporters of the New York Times who made the mistake of juxtaposing the photo with that headline. And if they were able to say, I'm sorry, we didn't say, I didn't intend that defamatory implication, and the plaintiff didn't come forward with any evidence to contradict it, the New York Times would win that case under Newton, Eastwood, and Bonds. In the Ninth Circuit, anyway. In the Ninth Circuit. In the Ninth Circuit. Okay. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Steve Weinberg, and I'm counsel on behalf of Ms. Manzari. And everything I've heard today, I've already heard in the district court, and I'm in the enviable position of having a district court judge who thoughtfully considered all of these issues and walked through a very thorough written decision addressing all of these points, all of them. So what's the evidence that the reporters intended the defamatory by implication statement? Here's what the district court found, and here's what is laid out in my brief. These reporters admitted in their declarations that they knew, they didn't know, the identity of the person who was the female who tested HIV positive. At the time that they knew that they didn't know, they plucked my client's picture out of basic obscurity from a stock photo database, popped her into the article with headlines that suggested, and Your Honors have already indicated that, when somebody goes into a grocery store and sees a tabloid. In fact, I think this was even in the Eastwood case. The Eastwood case talks about how people casually look at the headlines in a tabloid as they're checking out at the grocery store. That's actually language from the Eastwood case. This is an instance where, when you juxtapose a picture with a headline that suggests a defamatory meaning, it's defamatory. If there's any kind of dispute about that, it actually goes to a jury. Right, but we have a public figure. I know that's another issue, but just assume for talking purposes that it's a public figure. Ms. Bolger's key point was that you have affidavits that show no subjective intent, and you've done nothing to raise a factual issue on that point. Well, we have, Your Honor. First of all, the defendants see the Dodds and the Newton cases as basically get-out-of-jail-free cards for the tabloid press. Under those decisions or their interpretation of those decisions, any time that they get caught doing something, all the reporters have to do is say, oops, we didn't know we were conveying that meaning. This has already been rejected by the Ninth Circuit. In the Solano case, one of the art directors, she had her deposition taken, and they asked her, well, did you understand that this gave a defamatory meaning? And she said, no, I had no idea that juxtaposing the plaintiff's picture on the cover of the magazine would give a defamatory meaning to that picture. I had no idea. I didn't intend it. And the Ninth Circuit still found that that was a defamatory meaning. Another point I want to make. Did they find that there was actual subjective intent? In that case, that issue did not come up. It was just an actual malice analysis. Could you tell us, then, what else you would say about Newton? Here's what Newton and Dodds apparently do. It's kind of difficult. First of all, the facts of Newton and Dodds are miles away from the facts in this case. In Newton, it was a 37-day trial with seasoned reporters who investigated the case from top to bottom, and all they did was avoid one particular source who they thought was not credible. And the issue there was, was there purposeful avoidance? The actual malice analysis is, do you know it's false, or do you proceed to press with reckless disregard as to whether or not it's true or not? But there's more. If you purposefully avoid the truth, it's tantamount to knowing it's false. And there's cases in the Ninth Circuit. I believe that's cited in my brief. I believe it's the Kalin case. So what the defendants want those two cases to be are get-out-of-jail-free cards completely across the board. And my esteemed opposing counsel has said that those are groundbreaking cases. Well, they haven't been cited. They haven't been cited by anybody. Let me just ask you, what if they put a picture of a judge in a robe in there instead of Donnie? Would that have mattered? I think it would. Nobody would assume a robe judge was the same person as a female performer who had tested positive for AIDS. Those two pictures don't make sense. Yes, but for some reason we've said that the reasonable and objectively reasonable observer's understanding is irrelevant and that the only thing that matters is the subjective intent of the reporter or writer. Those are two different issues, Your Honor. One is with regard to whether the image is susceptible to a defamatory meaning based upon what normal readers would see. And we're on the other issue now with regard to actual malice. And I call it actual malice plus because they're asking for more on top of the actual malice. That's correct, but that does seem to be our case law. So I guess I'm still asking what is the evidence that would rebut that a jury could reasonably believe without looking at what an objectively reasonable observer would think, that a jury could reasonably believe that the reporters did not actually subjectively intend to imply that your client was the HIV-positive actress. Okay. Well, first, under Kalin and Eastwood, the credibility of the declarations of the reporters saying that they believed one way or the other, those are purely jury questions. That's first. Second of all, we established that they knew and purposefully disregarded information from the Corpus database. And my opposing counsel said that, oh, well, that was a declaration that we objected to in the lower court, but they never pressed for a ruling with the lower court, with the trial court. And then also, when you look at the other evidence. Was that admitted? Did the district court consider that evidence? Because they're saying it was inadmissible. District court admitted that particular declaration, plus the screen capture. And here's why. And this comes from this Court's decision in Greater Los Angeles Agency on Deafness v. CNN. And in that case, this particular panel, two jurists on this panel, laid out the test for establishing merit on a slap motion. And basically says, to satisfy the burden of the second step, plaintiff must demonstrate that its claims have only minimal level of legal sufficiency and triability. In determining whether the plaintiff has satisfied this low burden, we neither weigh credibility nor compare the weight of evidence. Rather, we accept the true — we accept as true the evidence favorable to plaintiff. So under that standard, the district court followed this rule and accepted as true all the evidence favorable to plaintiff, including — Two things. Ignoring the information in the Corbis database. I don't remember what the other one was. Publishing while knowing that they did not know the identity of the actual performer. Whose declaration was that? These were the Nye and the other declaration. Okay. And so did you also submit a declaration? Yes, we did. My client did submit a declaration. And which one? What was — who was the declarant? The declarant was Leah Manzeri, Ms. Nash. So you didn't submit any evidence rebutting their claims that they didn't have any intent? Well, here's what the Ninth Circuit says about that. The Ninth Circuit in Kalin and in Eastwood and Solano basically say, of course the press is going to say they didn't have any subjective intent. Of course they're going to do that. We can't get into their minds. Just like any criminal case, you have to prove subjective intent by circumstantial evidence, and that's what's allowed in these cases. The circumstantial evidence here is they printed this article knowing that my client was not HIV positive, knowing that my client was not the female performer who had tested positive for AIDS, and also knowing that that person had not been identified. Those three things, plus the purposeful avoidance of the actual data where if they had spent any amount of time, they would have found out that my client hadn't been in the business for maybe 15, 20 years, that she had never performed in a hall, and that this was her posing on a bed rather than performing in an adult film. They could have found all that stuff out had they just gone the extra step and not purposefully avoided finding the truth. So going back to Judge Kleinfeld's hypothetical, the New York Times, they headline the picture of the senator. Opposing counsel says, well, the New York Times wins in that case. Do you agree? Because that's very similar to this. No, I don't agree. And here's why. We don't know why those reporters picked that particular photograph. We don't know what was going on behind the scenes. We don't have a chance to figure out what was going on in their heads. If it was just purely a mistake, that's one thing. But if maybe there was some other agenda going on, we don't know. That's the issue. I don't know who wins in that case. It depends on what people are doing. Because you didn't take the opportunity to depose the reporter and the photo editor. That's correct, Your Honor. This is a very early stage in the case. And I'm a decent deposition taker, but I didn't think at that particular point in time I could get two reporters to admit, oh, you know what? We did know that we were conveying a defamatory meaning. They were going to stick to the declarations that I already had. I had declarations from them where they admitted that they knew that my client was not the person who had the HIV. They admitted that they didn't know who the person was. And I also had the evidence that they had not done any homework to find out who she was before printing that photo. What is your best case for what you say the purposeful avoidance can arise to subjective intent? I'm not sure I understand the question. Well, you're saying that there's enough evidence of subjective intent under various cases, right? Yes. And they're saying no, there's not. But you've constructed now they didn't know who the performer was that had HIV. They knew it wasn't her. They knew the person hadn't been identified. And then you go on and say, well, this was purposeful avoidance in terms of what they should have done. Do you have a case that links that purposeful avoidance with subjective intent? I don't think in the Ninth Circuit you've gone that far to make those connections yet. Do you have a case in another circuit? No, I don't, Your Honor. I wish I did. I did research on Newton and Dodds, and I have not found another court that has followed through with that same thread. It's more like a Ninth Circuit rule that was unique to those particular cases. I haven't seen it applied elsewhere because basically what it is is it allows a tabloid press to print anything it wants and just come along later and say, you know, we didn't intend that meeting. We didn't intend that meeting. And you have to look at the context of those cases as well where there were extensive investigations, and on review the courts found, you know what, there wasn't enough to show that they actually intended to say something false, whether it was true or false. Do you think that Dodds and Newton have been cut back on by any other Ninth Circuit cases? That's a good question. I have not seen another Ninth Circuit case refer back to Dodd and describe and cut back in that way. I think the more recent slap cases and defamation cases seem to avoid. I don't remember what Eastwood did with Dodds and Newton. Pardon? I do not remember what Eastwood did with Dodds and Newton. Do you happen to recall? Eastwood was before Dodds and Newton. That would explain it. And we have a more recent case that's the Makoff versus Trump case, which came from the Ninth Circuit. And in that case, there was a very thorough analysis of the public figure issue, the limited public figure issue, and also the actual malestandage, which did not even refer to Dodds or Newton. I guess if she's not a public figure, you're probably home free, but it's sort of hard to get there. Yes, Your Honor. And I'd be willing to entertain that subject, and I can speak about it. I know this has all been briefed very thoroughly by myself and my opposing counsel, and I think the Court has enough information to make that decision. The one point that I would make with regard to my client is she's not Steve Jobs. In their brief, they basically said she's comparable to Steve Jobs. It's highly likely that none of the three of us have ever heard of her. That's correct. Nobody else in this courtroom has probably ever heard of her. And then the issue is just whether or not she's a limited public figure. And if she is a limited public figure, it's a limited public figure with respect to those things that she had some access to the media, and that was her testimony for the Child Online Protection Act, protecting minors from harmful contact or inappropriate content, and her experience on the Internet as an entrepreneur. Now, if the Daily Mail had criticized her about those things, then we'd have a different case, and then she'd be a limited public figure for those things. But they didn't criticize her. They didn't do anything with regard to those issues. Those issues in particular. What they did is they pulled her picture out of obscurity and planted her in this brand-new issue. And the standard in the Ninth Circuit is that, based on Gertz, you have to be thrust into the issue for the purpose of persuading the issue to go one way or the other. And with that, I'll stop. Thank you. Why don't we start the clock over and give you a minute for rebuttal. Very quickly, Your Honor. The cases actually went Newton-Eastwood-Dodds. And Eastwood appeared actually to question the Newton rule, and the Dodds court actually reaffirmed it and went slightly further. The Newton rule has been accepted by the Second, Fourth, D.C., Third Circuit. The Second Circuit just accepted it last month in a case called Bureau. Here, Your Honor, the failure to investigate anything about Ms. Manzari is further evidence that the defendants didn't intend to convey the implication. They didn't know to investigate her because they didn't know that they were accusing her of being HIV positive. So my hypo, if the New York Times carefully avoids looking up the name of the senator from the flyover state, then they're home free, implying that he takes bribes. No, Your Honor, because what they would have to carefully avoid looking up is whether he took bribes. In this case, he's saying they didn't look up whether Ms. Manzari was HIV positive. So obviously they didn't look up whether Ms. Manzari was HIV positive because they didn't think they were saying that. So in your hypothetical, Your Honor, it would be that they didn't look over whether the senator was taking bribes because they didn't think they were saying that the senator was taking bribes. So that would be how I would distinguish that. As to the Corbis database, first of all, they have different SKU numbers. They're totally different images. But did the district court admit the evidence? It did not admit the evidence, but it referenced it in its decision. It considered it. Right. But very significantly, even if you credited it, all it did was say her name, right? So the only thing it would go to was whether the reporters knew who she was. It doesn't say she's HIV positive or not. It's not probative of whether they intended to say she was HIV positive. The only thing it would be probative of was whether they knew who she was. As to the public figure point, Your Honor, the plaintiff sought publicity. She has a website that still boasts of the times she's been downloaded. She sought entry into the Guinness Book of World Records. All you need to do is look at a page. She still has pictures of herself having sex on her website. Pictures, videos, Your Honor. Counsel, you started answering before I finished my question, and I don't know if you heard my words, of herself. Yes, Your Honor. She still does have pictures of herself engaged in sexual activity on the website. Yes, Your Honor, and more than 30 videos. And, Your Honor, she boasts repeatedly that she's been downloaded more than a billion times as of 2001. Your Honor, there are only 7.4 billion people on earth, and there are a billion downloads of this woman as of 2001. She's clearly a public figure by any measure. I think that's it. Oh, Your Honor, as to this argument that there's purposeful avoidance here, there's no purposeful avoidance of the defamatory meaning, right? The alleged defamatory meaning is that the plaintiff is HIV positive. Nobody purposely avoided that fact because nobody thought they were saying that fact. And that's why the Newton and Eastwood and Dodds rule is so significant here. There's no evidence. So he says, well, if that's the standard, that all you have to do is say, of course I didn't intend it, is there any how would you ever get subjective intent? You take a deposition, Your Honor. You take a deposition of the defendant. Can you ask them if they do intend? Yeah, even Eastwood says every defendant is going to say that. Right, but then in Eastwood, actually, they deposed the defendants and found actual evidence that the defendants fabricated parts of this story, and that's where the court got to actual malice in that case. In Newton, they find intent to convey the defamatory implication based on the depositions of the defendants, which were contrary to their sworn affidavits. Here, the plaintiff didn't seek a defamation. So unless the defendant actually states, no, I lied in my declaration, there would be no way to establish that there was intent or that. No, Your Honor. That's actually not what happened in Eastwood. What happened in Eastwood was that one of the reporters testified that they use what the court referred to as code words, that they say either in exclusive or you'll only see it here in the National Enquirer, and that those different words mean different things and they're intending to convey something different when they talk. And the court said, well, if they knew what they were intending to convey when they used these code words, then they intended to convey the defamatory implication there. So he didn't say, oh, yeah, I lied in my affidavit. He gave indicia of intent that were inconsistent with his affidavit. And had Mr. Weinberg deposed the defendants here, he could have found that, and of course, he was entitled to do so and never sought those depositions. Thank you. I thank both counsel for your argument on a very interesting case this morning. With that, the case is submitted and we're adjourned.
judges: Kleinfeld, McKeown, Ikuta